UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20mj03178 Reid - 3CCD

UNITED STATES OF AMERICA

vs.

UNTARIUS DEMONT ALEXANDER and
RODRICK MAURICE HAMILTON,

    Defendants.

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? _ Yes X No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? __ Yes X No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? _ Yes X No

                        Respectfully submitted,

                        ARIANA FAJARDO ORSHAN
                        UNITED STATES ATTORNEY

BY:    /s/ Shane Butland
        Shane Butland
        Assistant United States Attorney
        Southern District of Florida
        Court ID No. A5502525
        99 Northeast 4th Street, 4th Floor
        Miami, Florida 33132-2111
        Telephone: (305) 961-9123
        E-mail: Shane.Butland@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>UNTARIUS DEMONT ALEXANDER and<br>RODRICK MAURICE HAMILTON,<br><br>*Defendant(s)* | )<br>)<br>) Case No. 1:20mj03178 Reid - 3CCD<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **September 29, 2019** in the county of **Miami-Dade** in the **Southern** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Conspiracy to Commit Hobbs Act Robbery |
| 18 U.S.C. § 1951(a) | Attempted Hobbs Act Robbery |
| 18 U.S.C. § 924(c)(1)(A)(ii) and (iii) | Brandishing and Discharging a Firearm in Furtherance of a Crime of Violence |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

TFO Kenneth Veloz, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Face Time.

Date: July 17, 2020

*Judge's signature*

City and state: Miami, Florida

Lisette M. Reid, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kenneth Veloz, being first duly sworn, hereby depose and state as follows:

1. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I have served as an ATF Task Force Officer in Miami for approximately nine (9) years. I have been employed as a law enforcement officer with the Miami-Dade Police Department for twenty-seven (27) years. Currently, I am assigned to the Street Terror Offender Program ("STOP")/High Intensity Drug Trafficking Area ("HIDTA") Task Force. My duties include the investigation of a variety of federal offenses, including crimes such as Hobbs Act robbery, the possession of firearms in furtherance of violent crimes, and drug trafficking offenses.

2. The information set forth in this Affidavit comes from my personal involvement in this investigation, as well as from information provided to me by other law enforcement officers who were involved in the investigation. This Affidavit does not represent every fact known about this investigation, but is rather submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint charging UNTARIUS DEMONT ALEXANDER ("ALEXANDER") and RODRICK MAURICE HAMILTON ("HAMILTON") with conspiracy to commit Hobbs Act Robbery, in violation of Title 18, United States Code, Section 1951(a); Hobbs Act Robbery, in violation of Title 18, United States Code, Section 1951(a); and Brandishing and Discharging a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii) and (iii).

## PROBABLE CAUSE

3. On or about September 29, 2019, at approximately 10:12 a.m., an armed robbery occurred at the Grab-A-Snack Convenience Store (the "Store"), located at 1490 NW 71st Street, Miami, Florida. Video surveillance cameras located inside of the Store captured the robbery, which

I reviewed. In the video, two masked individuals entered the Store. One of these masked individuals, who was later identified as ALEXANDER, was wearing a yellow hooded sweatshirt and dark pants, and the other individual, who was later identified as HAMILTON, was wearing a black jacket and black pants with gray/white stripes on the side.

4. ALEXANDER walked into the Store while HAMILTON remained by the door. ALEXANDER then attempted to access the "Employees Only" area behind the cashier counter where the Store's clerk (victim "C.C.") was standing. This area is largely enclosed by bulletproof glass, but has an open area in front of the register where customers and the clerk can exchange money and goods. Other than through that opening, the only alternative access point for behind the counter is through a side door. ALEXANDER initially attempted to enter the restricted area through the side door, but after realizing it was locked, he then moved towards the opening in the glass enclosure, while HAMILTON remained by the Store's entrance.

5. ALEXANDER then jumped on top of the cashier counter and pulled a firearm from the pouch pocket of his hooded sweatshirt. In response, C.C. grabbed a firearm from under the counter and shot at ALEXANDER multiple times, forcing ALEXANDER to retreat from the window and take cover behind one of the Store's food displays, where ALEXANDER returned fire. ALEXANDER and C.C. continued to fire multiple rounds at each other, and during the course of this exchange, ALEXANDER was struck with a bullet, which resulted in a significant amount of blood being left at the scene. Meanwhile, during the firefight, HAMILTON also brandished a firearm and shot the firearm in the direction of C.C.

6. HAMILTON thereafter fled the Store and ran eastbound on NW 71st Street. ALEXANDER fled the Store approximately one minute later and ran in the same direction as HAMILTON. C.C. immediately called 9-1-1 for assistance and law enforcement responded to the

Store. On scene, law enforcement collected blood samples from the Store's floor for subsequent DNA analysis and comparison.

7. Shortly thereafter, the City of Miami Police dispatch received a call of a single vehicle crash at the intersection of 2nd Court and NW 71st Street, Miami, Florida, which is located approximately 1.3 miles east of the Store. Video surveillance from a nearby business showed that the crash occurred approximately three (3) minutes after ALEXANDER and HAMILTON fled the Store.

8. Law enforcement responded to the crash scene and discovered that the crashed vehicle—a black Ford Explorer SUV (the "Vehicle") with Florida tag number KSAY46—was registered to HAMILTON. Law enforcement officers also observed that the Vehicle's license plate was covered with a piece of cardboard.

9. Law enforcement recovered a Samsung cellular phone from the front passenger seat of the Vehicle. A search of that phone, which was conducted pursuant to a search warrant signed by Miami-Dade State Court Judge J. Mansfield on or about October 28, 2019, revealed that the phone was registered to HAMILTON.

10. Law enforcement also observed and obtained samples of blood on the front passenger interior of the Vehicle despite there being no evidence of severe impact or shattered glass that could have caused such injuries to the Vehicle's occupant(s).

11. Thereafter, members of the City of Miami Police Department received a report from individual with the initials "P.S.," who claimed that she was the owner of the Vehicle and that it was stolen by an unknown male from her house. When interviewed about the theft, P.S. subsequently admitted to law enforcement in a recorded statement that the Vehicle was not stolen as she initially reported. Rather, P.S. stated that HAMILTON, who was the registered owner of

the Vehicle and her boyfriend, left her house with the car earlier that morning after receiving a call from his friend "Stutter." HAMILTON returned to the house later that morning and told P.S. that the car had been involved in a bad accident and that "Stutter" was shot. HAMILTON then demanded that P.S. call the police to report that the Vehicle was stolen, and told P.S. what to say to the police.

12. P.S. reported that HAMILTON then took the keys to a vehicle registered to P.S.—a black Chevy Impala, tag number LMGM49—and left to get "Stutter."

13. P.S. further stated to law enforcement that she knew "Stutter" as HAMILTON's friend and positively identified a photograph of ALEXANDER as the individual she knew as "Stutter."

14. On or about October 4, 2019, ALEXANDER was arrested and charged in state court with an unrelated crime. ALEXANDER's cellular telephone was seized incident to his arrest and subsequently searched pursuant to a search warrant. ALEXANDER's phone contained a photograph of him and HAMILTON on or about September 1, 2018. HAMILTON appears to be wearing the same pants in that photograph—black pants with three gray/white stripes down the legs—as he was wearing during the robbery on or about September 29, 2019.

15. On or about October 7, 2019, law enforcement obtained a buccal swab from ALEXANDER that was compared with the swabs of the blood located in the Store and inside of the Vehicle. That comparison revealed that the DNA profile obtained from ALEXANDER's buccal swab matched the DNA profile obtained from the swabs of the blood from the Store and the Vehicle.

16. HAMILTON was thereafter arrested by Florida state authorities on or about March 20, 2020. HAMILTON provided an audio-recorded statement to law enforcement after waiving

his *Miranda* rights, in which he stated that he picked up ALEXANDER in the Vehicle the morning of September 29, 2019 and took him to HAMILTON's niece's house, which is located approximately 0.8 miles from the Store. HAMILTON stated that he went inside to visit with his niece while ALEXANDER stayed in the car, and realized when he exited the residence twenty (20) minutes later that ALEXANDER took the Vehicle without HAMILTON's permission. HAMILTON then stated that he took a car service back to P.S.'s residence, at which time ALEXANDER showed up with a gunshot wound but would not provide an explanation as to how it occurred or the Vehicle's location. HAMILTON then claimed he took ALEXANDER to one of ALEXANDER's friend's houses in a separate vehicle and cleaned the vehicle afterwards.

17. Based on the foregoing, your Affiant respectfully submits that there exists probable cause to believe that ALEXANDER and HAMILTON committed the offenses of conspiracy to commit Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a); attempted Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a); and Brandishing and Discharging a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii) and (iii).

FURTHER YOUR AFFIANT SAYETH NAUGHT

Task Force Officer Kenneth Veloz
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1, by Face Time
this 17th day of July 2020.

HONORABLE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

5